(166 App. Div. 522)

RAYMOND CONCRETE PILE CO. v. JOHN THATCHER & SON.

(Supreme Court, Appellate Division, Second Department. March 12, 1915.)

CONTRACTS &⇒280—ACTION FOR BREACH—NONPERFORMANCE BY PLAINTIFF.

Where a contract for concrete piles required the contractor to drive a specified number of piles of a fixed length "until not more than ten blows" of a certain power hammer were required to secure one inch penetration, and provided for the driving of additional piles or additional lengths of piles at a fixed rate per foot, and for reductions from the contract price if shorter piles were sufficient, and the contractor drove 32 piles more than the specified number, and 23 of the piles, all of which were more than 20 feet in length, were not driven till they met the required resistance test, the contractor could not recover the contract price for those 23 piles.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1249–1280; Dec. Dig. &⇒280.]

Thomas, J., dissenting.

Appeal from Trial Term, Kings County.

Action by the Raymond Concrete Pile Company against John Thatcher & Son. From a judgment for plaintiff for the amount ad-

[2] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 60 Hun, 576.

mitted to be due, and an order denying plaintiff's motion to set aside the verdict and for a new trial, the plaintiff appeals.   Affirmed.

See, also, 158 App. Div. 546, 143 N. Y. Supp. 959.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

Martin Conboy, of New York City, for appellant.

Hugo Hirsh, of Brooklyn (Emanuel Newman and Benjamin Reass, both of Brooklyn, on the brief), for respondent.

PER CURIAM.   The plaintiff sued for a defined amount of money which it claimed to be due for services rendered under a written contract with the defendant.   The defendant denied performance as alleged by the plaintiff, but admitted a certain amount as due for such work as the plaintiff had done under the contract.   The complaint was dismissed as to the items disputed by the defendant, and judgment was directed in favor of the plaintiff as to the items not controverted. From this judgment the plaintiff appeals.

There is no dispute as to the facts.   The case was here before, and a judgment directed for the defendant was reversed.   Thomas, J., 158 App. Div. 546, 143 N. Y. Supp. 959.   The defendant had a contract, with specifications, to build a mortuary vault in Greenwood Cemetery. According to the specifications, cement piles were to be driven under all walls and piers in "staggered rows."   "The piles shall be of type known as Raymond concrete steel piles, consisting of a steel shell driven into the ground and then filled with concrete. * * * The piles shall be driven to refusal with a No. 2 Vulcan steam hammer, refusal being understood for the purpose of this specification to mean that the piles shall not penetrate more than one inch under the last 16 blows of the hammer."   The defendant submitted the plans and specifications to the plaintiff for a proposal, which the latter made in writing. This proposal was accepted by the defendant, and its language as to the driving of the piles is as follows:

"The pile core shall in each case be driven until not more than ten blows of a No. 2 Vulcan steam hammer are required to secure one inch penetration."

The proposal provided for 181 piles, each 20 feet in length.   Additional piles, or additional lengths of piles, were provided for at $1.30 a lineal foot.   In all, 213 piles were driven; that is, 32 additional piles. As to 23 piles, the defendant disputed performance according to the terms of the contract.   A list of these disputed piles was stipulated. As to these piles, the plaintiff had stopped driving, as to each of them, while penetration of one inch was going on with less than 10 blows of the hammer, in some cases at 4, 5, 6, 7, 8, and 9 blows of the hammer.   All of these disputed piles were from 32 to 41 feet in length.

We can find no evidence in the case showing why the plaintiff stopped driving under less than 10 blows of the hammer.   It may be that the core by which the driving was done was less in length than the pile, but in the stipulated list there is at least one pile as to which the core was longer than the pile.   Concededly, as to 23 piles, the plaintiff ceased driving at a point where the core still penetrated one inch under the last 10 blows of the hammer.   Why was this?   We do not

know, and we find no evidence in the record which attempts to explain it. It certainly was not the presence of boulders, for the core was still penetrating. Geer, the construction manager of the plaintiff, was called as a witness, and he does not explain it. There is much argument between counsel as to the interpretation of the contract between the parties. There is no claim of ambiguity; each insists that it was plain; but the appellant asserts that the trial court really changed its wording, and interpreted it in opposition to its plain terms. We do not so see it. It seems to us quite plain that the contract required the piles to be driven until a penetration of not more than one inch resulted from the last 10 blows of the hammer. The standard of hammer blows was 10. If there was no penetration of more than one inch under the last 10 blows, then the driving might cease. The driving was to go on, however, until that result was attained. Such was what the contract required, and that was not done as to the 23 disputed piles, and hence as to them the contract was not performed by the plaintiff. Neither party asked to go to the jury, for there was no possible dispute as to the facts.

The judgment and order should be affirmed, with costs.

JENKS, P. J., and CARR, STAPLETON, and PUTNAM, JJ., concur. THOMAS, J., reads for reversal, and for judgment in favor of plaintiff for the price of the piles in dispute.

THOMAS, J. (dissenting). In my judgment the plaintiff is entitled to succeed. It sued for furnishing and driving certain piles, each one of which bore its own number. The defendant stipulated that the plaintiff should recover for all save 23, and the trial court decided that the plaintiff should not recover for such piles, although they were furnished and driven, but, as held, they were not driven as far into the ground as the contract contemplated. In other words, it was decided that they were not "driven until not more than 10 blows of a No. 2 Vulcan steam hammer are required to secure one inch penetration." The difference between the parties is fundamental. The contention of the defendant is that, although the piles were driven their whole length, and however much below the surface, the plaintiff cannot be paid for any pile provided finally it does not meet the test to which I have just called attention; that is, the defendant's contention is that if a pile was driven out of sight, and in the process it did not take 10 blows of the hammer to send it one inch, the plaintiff cannot recover. When the case was here before, there was nothing to show whether, when a pile had been driven its whole length into the ground, there was any way of driving it farther; but now, as I understand, it is admitted that, when it is down its full length, all has been done that can be, whether it comes up to what is called the test or not. All the 23 piles now in dispute were driven, each its full length into the ground, and the man who was the defendant's superintendent so testified. I do not understand that there is any contention to the contrary by the parties.

The real question is, as I think, whether the plaintiff agreed to deliver and drive piles of selected lengths, and the question is fully an-

swered by referring to the contract, which is in the form of a letter by the plaintiff to the defendant, on which is indorsed an acceptance. The defendant had undertaken to furnish the material and labor for building a chapel in Greenwood Cemetery, and his agreement required that he should secure a foundation by the use of piles known as "Raymond concrete steel piles," and the defendant stipulated with Warren & Wetmore, the other party concerned in the contract:

"(3) The piles shall be driven to refusal with a No. 2 Vulcan steam hammer, refusal being understood for the purpose of this specification to mean that the piles shall not penetrate more than one inch under the last 16 blows of the hammer."

The plaintiff's letter at the outstart refers to the plans and specifications, "and to our plan No. 591a submitted herewith," and proposed to "furnish all tools, material, and labor and place Raymond concrete piles, for the agreed price hereinafter stated." Later in the letter it is definitely stated what piles it will furnish:

"Price for one hundred and eighty-one (181) Raymond concrete piles, each 20 feet in length, shall be five thousand four hundred and sixty ($5,460.00) dollars. Should additional piles or additional lengths of piling be required, same shall be placed for the sum of one dollar and thirty cents ($1.30) per lineal foot. Should short piles be found, sufficient deduction from the 20 foot length shall be made at the rate of sixty cents (60¢) per lineal foot."

Here, then, was a statement of what the plaintiff proposed to furnish, and the price that would be charged for it. Now the defendant insists that the plaintiff was not only responsible for furnishing the piles at the agreed price, but also insured that when driven they would be long enough so that the test to which I have referred could be applied, and that if they did not meet the test, the plaintiff could not recover. In other words, the defendant imposes upon the plaintiff a burden of determining before the pile is driven whether it would be sufficient at the peril of losing his compensation, even if it should go out of sight without meeting the test. I think that such was not the contract. The plaintiff did not become a subcontractor, stipulating to furnish the requisite foundation for the chapel, but offered to furnish and drive piles of stated lengths at stated prices. How many it would take and what lengths to make a suitable foundation according to defendant's contract with Messrs. Warren & Wetmore depended upon conditions that could not be foreseen. The driving was done by blows of a steam hammer applied to a core incased in a shell. When the core had been driven its length, it was necessary to stop. If it was driven further, it could not be collapsed and withdrawn, leaving the shell into which the concrete was poured. The plaintiff's man in charge testified:

"Q. Please answer the question as to the manner in which you obtained the directions to put down your piles. A. Mr. Buck placed a stake for each pile driven. Q. And the pile was driven at the place where Mr. Buck put the stake? A. Every pile was so driven."

The plaintiff must drive where bidden, and is now called upon by defendant to insure that the pile would be long enough to meet a

required resistance. Some light is also gained by a letter from the defendant to the plaintiff, in which it is said:

"In reply to yours of the 17th inst., would say that in the course of conversation with the representative of Mr. Opdyke it was understood that you drive on Thursday with your 40-foot core; it being assumed from the borings that the required resistance can be secured with this core. If not, why then other steps will have to be taken."

This letter does not indicate that the defendant was indifferent, or was absolving himself from care as to the length of the piles; but it shows that the question of the length of the core depended upon experiment. The defendant depends on the words:

"The pile core shall in each case be driven until not more than ten blows of a No. 2 Vulcan steam hammer are required to secure one-inch penetration."

Now this stipulation refers to each pile furnished, long or short, unless boulders or other obstructions be encountered which prevent securing further penetration. But if a pile were driven its whole length in the ground, and no way was known to the trade of driving it further, and that is admitted, how could the hammer apply 10 blows so as to secure further penetration? The whole matter comes back to this: Whether, when the plaintiff furnished the piles and drove them, the burden was cast on it of meeting what is called the test, and so taking upon itself the responsibility of determining whether a pile would be long enough to make such penetration as the alleged request demanded. I think that it was not so, but that the intention was that the plaintiff should furnish piles of certain lengths and drive them in, and until they were beneath the ground it should meet the test, unless it should meet boulders or similar obstructions.

The judgment should be reversed, and judgment ordered for the plaintiff for the price of the piles in dispute.